**United States District Court**
For the Northern District of California

1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7

8   MICHAEL W. BRISENO,

9              Petitioner,                              No. C 04-1458 PJH

10                                                **ORDER DENYING PETITION**
                                                 **FOR WRIT OF HABEAS CORPUS**
11        v.

12  JEANNE S. WOODFORD, Director,
    California Dept. of Corrections,
13
                Respondent.
14  _____/

15          Before the court is the petition for writ of habeas corpus pursuant to 28 U.S.C. §

16  2254, filed by state prisoner, Michael W. Briseno ("Briseno").  Having reviewed the parties'

17  papers, the record, and having carefully considered their arguments and the relevant legal

18  authorities, the court hereby DENIES the petition.

19                                  **BACKGROUND**

20  **I.    Procedural Background**

21          Briseno pled guilty to thirty-two felony counts of sexual misconduct with children.  On

22  May 12, 2000, the Santa Clara County Superior Court sentenced him to a determinate term

23  of nine years and four months in prison, to be followed by a consecutive indeterminate term

24  of 210 years to life.  On July 11, 2001, the California Court of Appeal dismissed Briseno's

25  direct appeal for failure to obtain a certificate of probable cause, and the California

26  Supreme Court denied review on October 10, 2001. Subsequently, on September 23,

27  2002, the California Court of Appeal denied Briseno's petition for state habeas relief, and

28  the California Supreme Court denied review on January 15, 2003.  Briseno filed the instant

United States District Court

For the Northern District of California

1    petition for federal habeas relief with this court on April 14, 2004.

2        The state subsequently moved to dismiss Briseno's petition as untimely, and on April

3    28, 2005, this court denied the motion and reinstated the briefing schedule on the petition.

4    However, on May 31, 2005, the state again moved to dismiss the petition on the grounds

5    that it contained unexhausted, procedurally defaulted, and non-cognizable claims.  On

6    September 6, 2005, the court granted in part and denied in part the state's motion.  The

7    court dismissed two claims as unexhausted, one as procedurally barred, and one as non-

8    cognizable.  Following that order, four claims remained.

9        The state filed its answer and opposition on October 6, 2005, and Briseno filed his

10   traverse on January 5, 2006.  Briseno, however, submitted with his traverse three new

11   declarations as exhibits, not previously submitted to the state courts.  The state

12   subsequently objected to the new declarations in a reply to petitioner's traverse, on

13   grounds that the three new declarations were not presented to the state court, added

14   additional facts that change the evidentiary bases for petitioner's claims, and therefore

15   rendered Briseno's claims unexhausted.  Thereafter, on February 3, 2006, Briseno filed a

16   formal motion to expand the record in order to include the three declarations under Habeas

17   Rule 7.

18       The court denied without prejudice Briseno's motion to expand the record on

19   September 28, 2006.  It concluded that Briseno had not demonstrated the threshold due

20   diligence required for expansion of the record, nor had he demonstrated the relevance and

21   necessity of the subject declarations.  Additionally, the court advised Briseno that prior to

22   expanding the record, he would need to address the effect of any expansion of the record

23   on the exhaustion of his claims before the state courts.

24       Briseno subsequently filed a renewed motion to expand the record on October 10,

25   2006, and the state responded on October 27, 2006.  On February 22, 2007, this court

26   issued an order noting that because the motion was intertwined with the merits of Briseno's

27   claims, it would consider the renewed motion in conjunction with this order on the merits.

28

**United States District Court**
For the Northern District of California

**II.    Factual and State Court Procedural Background**

Because the California courts denied Briseno's habeas petitions in postcard denials, there are no written, reasoned state court decisions on any of the issues raised by Briseno in his habeas petition.  Nor are there any state court decisions setting forth the facts relevant to this petition.  Accordingly, this court was required to conduct an independent review of the record, and what follows is based on that review.

Briseno was originally charged with thirty-three counts of child molestation stemming from his alleged conduct with six boys under the age of fourteen.  The facts underlying Briseno's guilty plea were drawn from the preliminary hearing, which consisted of testimony by two investigating police officers as to statements made by five of the six victims.  Exh. B, Record Transcripts ("R.T.") at 22; Exh. A, Clerks Transcripts, at 1-68.  Information regarding the sixth victim, Briseno's son, was based on observations by one of the other victims.

Briseno was a music teacher at an elementary school.  He met several of his victims during the course of providing them music lessons. John Doe 1 was a ten year-old boy who received private music lessons from Briseno during the summer of 1997.  Briseno twice attempted and twice committed lewd acts on John Doe 1 in a park, in Briseno's car, and in Briseno's bedroom.

John Doe 2 was an eleven year-old boy, who went over to Briseno's house to play video games with Briseno's six year-old son (John Doe 6).  Over several months, Briseno attempted one lewd act and committed seven lewd acts on John Doe 2.  John Doe 2 also saw Briseno molest and orally copulate his son.

John Doe 3 was a thirteen year-old boy.  During the summer of 1997, John Doe 3 accompanied John Doe 2 to Briseno's house to play video games.  Over the course of the summer, Briseno committed five lewd acts, attempted two lewd acts, and twice orally copulated John Doe 3.  He also showed John Doe 3 pornographic videos and photographs of John Doe 2 and his son.

3

United States District Court
For the Northern District of California

1    John Doe 4 was a ten year-old boy who took music lessons from Briseno in early

2  1997.  Briseno committed ten lewd acts on John Doe 4 at a school and at Briseno's home.

3  Briseno also videotaped himself sodomizing and orally copulating John Doe 4.

4    John Doe 5 was a ten year-old boy who took music lessons from Briseno in 1991.

5  He reported between 10 and 28 acts of molestation by Briseno.

6    The San Jose, California Police Department ("SJPD") began investigating Briseno in

7  1997 following two police reports that Briseno was molesting young boys.  Subsequently, a

8  lengthy investigation took place, during which the SJPD interviewed numerous witnesses

9  and victims.  Briseno was arrested on June 8, 1998, on charges related to John Does 1-3.

10  Several days after his arrest, SJPD officers interviewed Briseno in jail.  Briseno waived his

11  *Miranda* rights, and confessed to engaging in sexual conduct with those victims who had, at

12  that time, been interviewed and had provided accounts of Briseno's conduct as pertained to

13  them.

14    In October 1998, Briseno's retained counsel, Thomas Salciccia ("Salciccia"),

15  questioned his competency, and the court appointed an expert, Dr. Donk, to evaluate

16  Briseno.  R.T. 5-6.  After evaluating Briseno, Dr. Donk opined that he was competent to

17  proceed.[1]  The trial court subsequently reviewed the doctor's report, and found that Briseno

18  was competent.

19    During pretrial proceedings that took place on September 27 and 28, 1999, Salciccia

20  again moved the trial court to suspend the proceedings and to determine Briseno's

21  competence under California Penal Code § 1368.[2]  In support, counsel submitted letters

22  written by Briseno and argued that he suffered from impairment of reasoning, an emotional

23  disturbance, and irrational behavior.  R.T. 4.   In response, the prosecution noted that Dr.

24  _____

25    [1]That report was not included in the record before this court.  At subsequent pretrial
proceedings, Briseno claimed that Dr. Donk evaluated him during the middle of the night, and

26  that Donk fell asleep numerous times during the evaluation.

27    [2]The record suggests that Briseno filed a written motion to determine his competency,
*see* R.T. at 3, but the motion itself was not included in the record before this court.

28  Accordingly, the court relies on the transcripts from that hearing.  *See id.* at 3-37.

4

Donk had found Briseno competent to stand trial.  The court also allowed Briseno to address it on the record at the hearing.

The trial court subsequently found that Briseno was competent and declined to suspend the criminal proceedings.  In support, it asserted:

> [t]o be quite honest with you, Mr. Briseno, in addition to the testimony and the statements that you have just made in open court, they do not, in my view, or I'm convinced in any judicial officer's view, constitute remotely the concept or the type of mental disorder that would justify a finding that you were incapable of proceeding to trial and that you failed to understand the nature and circumstances of the offense or that you're unable to aid your counsel.

R.T. 8.  It later added:

> Your correspondence indicates to me that you have a clear understanding of the circumstances, the penalty, punishment, and that you disagree with the law, and that is not unusual for . . . a defendant to disagree with it or for that matter [with] other people.

R.T. 12.[3]

The court then afforded Briseno an opportunity to ask it any pertinent questions. Briseno responded that he did not "have very many questions," but offered that

> The only thing I would like to say is when I did turn myself in I didn't turn myself in to cause more problems.  I wanted to do the opposite.  The last thing I want to do is have a jury trial and I don't want to have a jury trial, all right, and I'm not going to have a jury.  I understand everything you said

---

[3]The court further stated:

> Based upon my reading of the correspondence of you to the District Attorney and to your attorney and some of the statements that you've made in open court, the best advice I can ever give any defendant is to take the advice of their own lawyer. . . .  And you've retained your attorney who, I assure you, I've known for, if I say it quick, 40 years.  So I know of my own knowledge that he is trained, experienced, and totally responsible and capable of giving you advice.
>
> Now, from my reading of the correspondence and, again, the statements that you've indicated to me, it's my feeling that you may have some reservation or some difficulty in accepting his advice, and what I wanted to do was to tell you from the bench the power or hopefully your respect as to some of the facts which I think you're laboring under a misapprehension.
>
> The primary one is that your attorney or any attorney or you do not have the power or the ability to say anything you want to the jury.  What evidence the jury hears is strictly controlled by the court.  In other words, the judge determines what evidence comes before a jury.  What evidence is relevant.  What evidence is admissible.

1    makes total sense to me.

2    R.T. 13.

3        Prior to taking the plea, the trial court advised Briseno of the consequences,

4    including the maximum possible penalties, of his guilty plea. R.T. 19-21. These

5    consequences included the possibility that Briseno "could be sent to [prison] for a

6    determinant sentence of ten years and eight months to be followed by a consecutive

7    sentence of 360 years to life," that he would be required to register as a sex offender, that

8    he could be placed on parole for up to seven years and sent back to prison for one year for

9    each violation of parole, and that all of the child molestation charges were strike offenses

10   with serious future consequences if he were to commit another future offense. R.T. 19-21.

11   Prior to entering his plea, Briseno assured the court that he was satisfied with his

12   representation. R.T. 21. Briseno subsequently entered an open guilty plea to all of the

13   charges, except the 33rd charge, involving his son, John Doe 6, which the state agreed to

14   dismiss. R.T. 19-37. The trial court also advised Briseno that he was not eligible for

15   probation, which Briseno clarified that he understood.[4]

16       On March 7, 2000, defense counsel filed a motion on Briseno's behalf to withdraw

17   his guilty plea. C.T. 164. Briseno argued in support that it was his understanding that the

18   dismissed charge concerning his six year-old son would not become public, but that it had

19   been leaked to the press. He sought to withdraw his guilty plea and proceed to trial based

20   on the damage to his reputation that the leaked information caused him. Counsel also

21   again argued that Briseno should be allowed to withdraw his plea because he was

22   incompetent, arguing that Dr. Donk's report was unreliable, and offering additional

23   correspondence from Briseno as evidence of his incompetency. At a March 31, 2000

24   _____

25   [4]Immediately following the guilty plea, the prosecution inquired regarding the necessity
     of admissions regarding probation eligibility allegations. R.T. 36. The trial court responded,
26   that "the crimes speak for themselves. There's no requirement of taking a plea as to the effect
     of a probation ineligible standard." R.T. 36. The court then stated "I've advised the defendant
27   of the consequences of his plea that he is not eligible," and then inquired again, "You
     understand you're not eligible for probation in this matter, Mr. Briseno?" R.T. 36. Briseno
28   replied "Yes." R.T. 36.

hearing, the trial court denied the motion.

Prior to sentencing, on May 4, 2000, Briseno filed a motion to fire his retained defense attorney, Salciccia, and to have a different attorney appointed for him. The court denied the motion, finding that "[t]here is simply no basis that I find whatsoever for substitution of counsel in this matter." R.T. 41. It also concluded that the motion would "cause a disruption of the orderly process of justice." R.T. 41. The court then proceeded to sentencing.

At the sentencing hearing, the court initially allowed several witnesses to testify on behalf of Briseno in terms of his community service and reputation, but prevented him from calling all of the witnesses he sought to have testify. The court found that the proffered testimony was relevant only to his suitability for probation, and noted again that Briseno was not eligible for probation, which defense counsel confirmed that he understood. R.T. 51. Nevertheless, Salciccia sought to introduce the witness testimony to counterbalance what he claimed was a "draconian" sentence recommended by the probation officer. R.T. 53. He advised the court, "Your Honor, we're not asking for probation." R.T. 54. The court ultimately ruled that the witness testimony was irrelevant because it was "required to confine the defendant in the state prison, period," since he was statutorily ineligible for probation, and that he did "not qualify for probation by any conceivable stretch of imagination or leniency based upon his prior good conduct, his future good conduct. It is simply unavailable." R.T. 54.

Prior to sentencing, Briseno elected to give a statement. He stated that he "had a mental illness," and suffered from "pedophilia." R.T. 63. He asserted that he "gave [his] life to children to the extent that it made [him] mentally ill." R.T. 63. Briseno further admitted that he was "very ashamed of what [he] did," but that he "never showed any type of force." R.T. 63. In fact, Briseno stated that he believed that he was the one who was "very vulnerable." R.T. 63. Briseno also asserted his displeasure with the legal system, contending that "[his] sincere confession was betrayed with gross unethical injust betrayal."

United States District Court

For the Northern District of California

1    R.T. 64.

2         The court subsequently sentenced Briseno to the sentence recommended in the

3    probation report.  In doing so, it found that the aggravating circumstances far outweighed

4    the mitigating circumstances.  R.T. 69.  The court noted that Briseno's crimes involved five

5    victims between the ages of ten and fourteen occurring "over a substantial period of time,"

6    and that, contrary to Briseno's assertion otherwise, there was evidence that he had

7    threatened his victims.  It further noted that Briseno's crimes "were not crimes of

8    opportunity" or "sudden impulses," but that they were "planned, contrived," and "repeated."

9    R.T. 70.  The court also stated that Briseno's "attempt to blame other individuals," including

10   the victims, "shock[ed] its conscience."  R.T. 69.

11                                    **ISSUES**

12        Briseno raises the following claims for relief in his federal habeas petition:

13   (1)   that he was denied effective assistance of counsel in violation of his
           Sixth Amendment rights when his trial counsel encouraged him to
14         plead guilty despite counsel's knowledge of his incompetence;

15   (2)   that he was denied effective assistance of counsel in violation of
           his Sixth Amendment rights when his trial counsel failed to advise him
16         of the consequences of his guilty plea;

17   (3)   that he was denied due process because his guilty plea was neither
           knowing nor voluntary since his counsel failed to advise him of the
18         consequences of his guilty plea; and

19   (4)   that he was denied effective assistance of counsel in violation of his
           Sixth Amendment rights when his trial counsel failed to obtain a
20         certificate of probable cause from the trial court, thus precluding him
           from appealing certain issues.

21

22                              **STANDARD OF REVIEW**

23        This court may entertain a petition for writ of habeas corpus "on behalf of a person

24   in custody pursuant to the judgment of a state court only on the ground that he is in custody

25   in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §

26   2254(a).  Because the petition in this case was filed after the effective date of the

27   Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the provisions of that act

28

                                         8

United States District Court

For the Northern District of California

1  apply here.  *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).  Under the AEDPA, a district

2  court may not grant a petition challenging a state conviction or sentence on the basis of a

3  claim that was reviewed on the merits in state court unless the state court's adjudication of

4  the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable

5  application of, clearly established Federal law, as determined by the Supreme Court of the

6  United States; or (2) resulted in a decision that was based on an unreasonable

7  determination of the facts in light of the evidence presented in the State court proceeding."

8  28 U.S.C. § 2254 (d).

9      A state court decision is "contrary to" Supreme Court authority, falling within the first

10  clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

11  reached by [the Supreme] Court on a question of law or if the state court decided a case

12  differently than [the Supreme] Court has on a set of materially indistinguishable facts."

13  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  "Clearly established Federal law" under

14  § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at

15  the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72

16  (2003).  This "clearly established" law "refers to the holdings, as opposed to the dicta, of

17  [Supreme] Court decisions as of the time of the relevant state court decision."  *Id.*

18      "Under the 'unreasonable application' clause" of § 2254(d)(1), a federal habeas court

19  may grant the writ if the state court identifies the correct governing legal principle from [the

20  Supreme] Court's decisions but unreasonably applies that principle to the facts of the

21  prisoner's case."  *Id.* at 1174.  However, this standard "requires the state court decision to

22  be more than incorrect or erroneous."  *Id.*  For the federal court to grant habeas relief, the

23  state court's application of the Supreme Court authority must be "objectively unreasonable."

24  *Id.* at 1174-1175.  The "objectively unreasonable" standard is different from the "clear error"

25  standard in that "the gloss of clear error fails to give proper deference to state courts by

26  conflating error (even clear error) with unreasonableness."  *Id.* at 1175;  *see also Clark v.*

27  *Murphy*, 331 F.3d 1062, 1068 (9th Cir. 2003).  Therefore, "[i]t is not enough that a habeas

28

9

United States District Court

For the Northern District of California

1  court, in its independent review of the legal question, is left with a firm conviction that the

2  state court was erroneous . . . Rather, the habeas court must conclude that the state

3  court's application of federal law was objectively unreasonable." *Andrade*, 538 U.S. at 75;

4  *see also Clark*, 331 F.3d at 1068.

5      As for state court findings of fact, under § 2254(d)(2), a federal court may not grant a

6  habeas petition by a state prisoner unless the adjudication of a claim on the merits by a

7  state court resulted in a decision was based on an unreasonable determination of the

8  facts in light of the evidence presented in the state court proceeding.  28 U.S.C. §

9  2254(d)(2).  The "clearly erroneous" standard of unreasonableness that applies in

10  determining the "unreasonable application" of federal law under § 2254(d)(1) also applies in

11  determining the "unreasonable determination of facts in light of the evidence" under §

12  2254(d)(2).  *See Torres v . Prunty*, 223 F.3d 1103, 1107-1108 (9th Cir. 2000).  To grant

13  relief under 2254(d)(2), a federal court must be "left with a firm conviction that the

14  determination made by the state court was wrong and that the one [petitioner] urges was

15  correct." *Id.* at 1108.

16      However, when the state court decision does not articulate the rationale for its

17  determination or does not analyze the claim under *federal* constitutional law, a review of

18  that court's application of clearly established federal law is not possible.  *See Delgado v.*

19  *Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000); *see also* 2 J. Liebman & R. Hertz, Federal

20  Habeas Corpus Practice and Procedure § 32.2, at 1424-1426 & nn. 7-10 (4th ed. 2001).

21  When confronted with such a decision, a federal court must conduct an independent review

22  of the record and the relevant federal law to determine whether the state court's decision

23  was "contrary to, or involved an unreasonable application of, "clearly established federal

24  law." *Delgado*, 223 F.3d at 982.

25          When a state court does not furnish a basis for its reasoning, we have no
           basis other than the record for knowing whether the state court correctly
26          identified the governing legal principle or was extending the principle into a
           new context. . . .[A]lthough we cannot undertake our review by analyzing the
27          basis for the state court's decision, we can view it through the 'objectively
           reasonable' lens ground by *Williams* [, 529 U.S. 362]. . . . Federal habeas

28

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law. . . . Only by that examination may we determine whether the state court's decision was objectively reasonable.

*Id.*

## DISCUSSION

As noted, because all of the above issues were raised only in Briseno's state habeas petitions, which were denied by both the California Court of Appeal and California Supreme Court in postcard denials, there are no written, reasoned state court decisions on any of the above issues. Accordingly, this court has conducted an independent review of the record and the relevant federal law in determining whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." *Delgado*, 223 F.3d at 982.

## I.    Motion to Expand the Record

Briseno seeks to expand the record to include: (1) a January 3, 2006 declaration from his trial counsel, Salciccia; (2) a December 22, 2005 declaration from petitioner himself; and (3) a January 1, 2006 declaration from his brother, Modesto Briseno ("Modesto"). Some of the information in the recent declarations was actually contained in prior declarations submitted by Briseno and Salciccia to the state courts. What follows is a discussion of the previous filings, and the information in the recent declarations that constitutes "new" evidence.

### A.    Salciccia Declarations

Salciccia previously submitted two declarations and one letter exhibit in filings with the state courts. Specifically, Salciccia submitted a March 7, 2000 declaration in support of Briseno's motion to withdraw his plea before the state trial court. Briseno's appellate and state habeas counsel, Jill Lansing, also submitted a June 20, 2001 letter from Salciccia as an exhibit to Briseno's state habeas petition, in addition to a December 20, 2001 declaration from Salciccia in support of the petition.

The essence of all of Salciccia's declarations is that he did not believe that Briseno

United States District Court
For the Northern District of California

was competent, and that he does not believe Briseno would have pleaded guilty if he had known the sentence he would receive.  Salciccia also attests in his declarations and letters that he did not inform, nor did he hear Briseno informed of the mandatory minimum sentence he would serve under his guilty plea.

In his submissions prior to the most recent January 2006 declaration, Salciccia did not attest to the advice that he provided Briseno regarding the possible sentence, except to state that Briseno had been advised of the *maximum* penalty, and that Salciccia believed that the worst possible sentence would have been sixty years.  However, in his most recent declaration, filed more than six years after Briseno pled guilty, Salciccia attempts to guess as to the advice he gave Briseno regarding the sentence.  He notes that although he "cannot now recall exactly what advice [he] gave to Mr. Briseno about the likely sentence should he plead guilty," he "believe[s] that [he] probably tried to communicate [his] concerns that [Briseno] would receive a sentence of at least sixty years."  Salciccia also offers greater detail in support of his competency concerns in the latest declaration.

**B.    Briseno Declarations**

Briseno's latest declaration contains more "new" information than that in the latest Salciccia declaration.  In his prior December 4, 2001 declaration submitted to the state appellate courts, Briseno asserted that he was never advised of the mandatory minimum sentence by Salciccia or the court; that he believed at the time of his plea that he would receive a ten-year prison sentence and be released back into the community; and that if he had known of the sentence he would receive, that he never would have pled guilty.  He asserted:

> I welcomed the opportunity to go to trial.  I gave it up reluctantly, and I gave it up based upon a gross misconception of what the result would be.  Had I known that by virtue of my plea I would never be released from prison, I would have gone to trial. He further stated that "[n]o one told [him] that the good [he] had done in [his] lifetime would be of no value in securing [him] a lenient sentence."

Contrary to his prior declaration, Briseno now additionally "explains" or "clarifies" in his December 2005 declaration, that:

12

United States District Court
For the Northern District of California

• Salciccia never told him that there was no possibility that he would receive a probationary sentence. He states that he was "completely shocked" when the judge stated at sentencing that he was not eligible for a probationary sentence. He further asserts that it "came as a complete surprise" to both him and Salciccia, and that he believes that Salciccia was also unaware that he was not eligible for probation;

• Salciccia did not advise him that he was likely to receive a sixty-year sentence;

• Salciccia did not advise him that he would receive at least one indeterminate life sentence;

• Salciccia did not discuss the likelihood of parole with him;

• Salciccia did not discuss the possibility of civil commitment as a sexually violent predator following his sentence; and

• Salciccia did not advise him that some of his witnesses might not be allowed to testify at sentencing.

Additionally, Briseno attests that had he understood several of the above facts - including that he was not eligible for probation, that he would receive an indeterminate life sentence, and that he would likely receive at least a sixty-year sentence – he would not have pled guilty but instead would have exercised his right to jury trial.

**C.    Modesto Declaration**

Modesto, Briseno's brother, did not submit any declarations before the state courts, so the instant declaration clearly constitutes "new" evidence. In his declaration, Modesto attests that he was "closely involved with" Briseno's defense, and has been a longtime friend of Briseno's trial counsel, Salciccia, who he asserts represented Briseno on a pro bono basis. Modesto asserts that Briseno's "mental confusion . . . led him to be unable to grasp the real seriousness of his situation." He contends that Briseno also always believed that he would "get out of prison."

Modesto also attests that he was "privy to conversations" between Briseno and Salciccia and that he never heard Salciccia tell him or Briseno about a mandatory minimum sentence, that he was likely to receive a sentence of at least sixty years to life in prison, that he was facing an indeterminate life sentence, that a parole board would make future decisions about his case, or provide the practical realities of a life sentence. Modesto does, however, recall that Salciccia advised Briseno "in terms of a range of 40 to 60 years

1   depending on how he presented to the probation department."

2       **D.      Analysis**

3       The requirements of 28 U.S.C. § 2254(e)(2), governing requests for evidentiary

4   hearings, also apply to decisions regarding expansion of the record under Rule 7.  *See also*

5   *Cooper-Smith v. Palmateer,* 397 F.3d 1236, 1241 (9th Cir. 2005).  Section 2254(e)(2)

6   provides:

7       If the applicant has failed to develop the factual basis of a claim in state court
        proceedings, the court shall not hold an evidentiary hearing unless the
8       applicant shows that:

9       (A) the claim relies on–

10          (i) a new rule of constitutional law, made retroactive to cases on
        collateral review by the Supreme Court, that was previously unavailable; or

11

12          (ii) a factual predicate that could not have been previously discovered
        through the exercise of due diligence; *and*

13

14      (B) the facts underlying the claim would be sufficient to establish by clear and
        convincing evidence that but for constitutional error, no reasonable factfinder
15      would have found the applicant guilty of the underlying offense.

16      The United States Supreme Court has interpreted the opening paragraph of the

17   section to provide that where a petitioner has indeed exercised diligence to "develop the

18   factual bases" of his claims in state court, the requirements of section 2254(e)(2)(A)& (B)

19   do not apply to his request for an evidentiary hearing, or in this case, to his motion to

20   expand the record.  *Williams v. Taylor*, 529 U.S. 420, 435 (2000); *Holland v. Jackson*, 542

21   U.S. 649, 652-53 (2004).  In other words, a petitioner who has exercised such diligence will

22   be taken out of the purview of section 2254(e)(2).  *Griffey v. Williams*, 345 F.3d 1058 (9th

23   Cir. 2003), *vacated on other grounds as moot*, 349 F.3d 1157 (9th Cir.2003) (petitioner

24   died); *Williams*, 529 U.S. at 430 (showing under 2254(e)(2) "applies only to prisoners who

25   have 'failed to develop the factual basis of a claim in state court proceedings'").

26      Diligence "depends upon whether petitioner made a reasonable attempt, in light of

27   the information available at the time, to investigate and pursue claims in state court."

28

                                        14

**United States District Court**
For the Northern District of California

**United States District Court**

For the Northern District of California

1   *Cooper-Smith*, 397 F.3d at 1241 (quoting *Williams*, 529 U.S. at 435).  Diligence requires in

2   the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in

3   the manner prescribed by state law.  *Williams*, 529 U.S. at 435.

4          Here, Briseno requested an evidentiary hearing in conjunction with his habeas

5   petitions in the state appellate courts, which this court must presume that the state

6   appellate courts denied on the merits in their postcard denials.  Thus, Briseno can be said

7   to have exercised some degree of diligence in so far as he requested an evidentiary

8   hearing.  However, it is unclear to the court why Briseno did not raise the above "new"

9   information contained in the recent declarations in his prior declarations filed before the

10  state appellate courts.  None of the "new" information is information that could not have

11  been discovered and included in the prior declarations through the exercise of due

12  diligence.  It was all information that would have been within the knowledge of the

13  declarants at the time their prior declarations were filed in state court.  As for Modesto

14  Briseno, who did not file a declaration in state court, there is no explanation as to why

15  counsel failed to submit a declaration from Modesto in state court.  Thus, as discussed

16  below in the specific claims raised by Briseno, the "new" information appears to be an

17  attempt by Briseno to improve upon and enlarge his claims before this court.  Accordingly,

18  as the state has pointed out, the "new" evidence could have the effect of rendering

19  Briseno's claims unexhausted.

20         Nevertheless, the court concludes that it is unnecessary to resolve the diligence and

21  exhaustion issues associated with Briseno's request to expand the record because, having

22  reviewed and considered the "new" information in the recent declarations submitted by

23  Briseno in conjunction with his federal habeas claims, it is clear that even upon

24  consideration of the "new" information in the expanded record, Briseno is not entitled to

25  federal habeas relief.

26  ////

27  ////

28

United States District Court

For the Northern District of California

**II.     Trial Counsel's Knowledge of Briseno's Alleged Incompetency and Encouragement to Enter Guilty Plea**

Briseno contends that he was denied effective assistance of counsel in violation of his Sixth Amendment rights when his trial counsel, Salciccia, encouraged him to plead guilty despite counsel's knowledge of Briseno's incompetence.  He argues that Salciccia was aware that he could not understand basic concepts about the workings of the criminal justice system, and that he held a "pathological optimism" regarding the eventual outcome of the case, but encouraged him to plead guilty nonetheless.  He further suggests that Salciccia simply "stood by" and allowed the trial court to make erroneous statements and rulings regarding his competence when trial counsel could and should have taken a more active role.  Briseno also contends that trial counsel "should have allowed" the case to proceed to jury trial.

A defendant may not collaterally attack his guilty plea's validity merely because he made what turned out, in retrospect, to be a poor deal.  *Bradshaw v. Stumpf*, 545 U.S. 175, 186 (2005).  A defendant who enters a guilty plea on the advice of counsel may generally only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases.  *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Signori*, 844 F.2d 635, 638 (9th Cir. 1988).  A defendant must satisfy the two-part standard of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), i.e., that counsel's performance was deficient and that the deficient performance prejudiced his defense, and establish the prejudice requirement by showing that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  *See Hill*, 474 U.S. at 57-59; *Iaea v. Sunn*, 800 F.2d 861, 864-65 (9th Cir. 1986).

In support of this claim, Salciccia has submitted a declaration in which he attests that he was "not able to clearly communicate" with Briseno, and as a result of mental illness,

United States District Court

For the Northern District of California

1    that Briseno was unable to assess the circumstances realistically.  He asserts that he never

2    felt like he was "getting through" to Briseno regarding the different functions of a judge and

3    jury because Briseno "always harbored the notion that the jury would acquit him if they

4    heard how much he had been through and how much he loves children."  Salciccia further

5    attests that he did not believe that Briseno "understood that by pleading guilty, he almost

6    certainly would spend most of the rest of his life (or close to it) in prison."  Salciccia

7    concludes that he does "not believe [Briseno] ever understood what was happening to him

8    in court" because he "simply was not playing with a full deck."  Briseno's brother, Modesto,

9    also attests that Briseno's "mental confusion . . . led him to be unable to grasp the real

10   seriousness of his situation."  He contends that Briseno also always believed that he would

11   "get out of prison."

12          There are several problems revealed by this court's review of the instant claim.  First

13   and most significantly, the court notes that the claim *does not* expressly challenge the trial

14   court's competency determination in and of itself.  Nevertheless, Briseno's ineffective

15   assistance of counsel claim appears to be a thinly-veiled attempt to challenge exactly that.

16          There is no dispute that Salciccia believed that Briseno was incompetent; in

17   fact, Salciccia raised the issue of Briseno's competency on three different occasions before

18   the trial court.  However, Briseno wrongly implies that it was his *counsel's* role to somehow

19   determine his competency.  Moreover, Briseno also presumes for purposes of his

20   ineffective assistance claim that the trial court's competency ruling was inaccurate.   That

21   issue simply is *not* before this court.  And, even if it were, this court's review of the record

22   suggests that the trial court did not violate Briseno's due process rights in the course of its

23   numerous competency rulings.

24          A trial court must ensure that a criminal defendant is competent to enter a guilty

25   plea.  *See Godinez v. Moran*, 509 U.S. 389, 396 (1993).  State court determinations of

26   competence to stand trial are entitled to a presumption of correctness in a federal habeas

27   proceeding.  *See Evans v. Raines*, 800 F.2d 884, 887 (9th Cir. 1986).  A federal court may

28

**United States District Court**
For the Northern District of California

overturn a state court competency finding only if it is not fairly supported by the record. *See id.* The test for competence to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – whether he has a rational as well as factual understanding of the proceedings against him." *Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960)). Due process requires a trial court to order a psychiatric evaluation or conduct a competency hearing if the court has a good faith doubt concerning the defendant's competence. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994); *see also Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004).

The standard for competency to waive counsel and plead guilty is identical to the standard for competency to stand trial. *See Godinez*, 509 U.S. at 396-99; *see also United States v. Arlt*, 41 F.3d 516, 518 (9th Cir. 1994) (filing of meritless motions without logical or legal foundation does not in itself justify denial of defendant's 6th Amendment right to represent himself). A finding that a defendant is competent to stand trial, however, is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel. In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary. *See Godinez*, 509 U.S. at 400 (citations omitted). To determine whether a defendant's guilty plea is "a voluntary and intelligent choice among the alternative courses of action," *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), a trial court must follow the guidelines set forth in *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). *See Godinez*, 509 U.S. at 401 n.12. Under *Boykin*, the record of the plea proceeding must reflect that the defendant voluntarily waived his right to a jury trial, the right to confront his accusers, and his privilege against self-incrimination. *See Parke v. Raley*, 506 U.S. 20, 28-29 (1992).

There is nothing in the record that suggests the trial court violated Briseno's due process rights in the competency procedures or standards it utilized, or in its ultimate

1  conclusion that Briseno was competent.  At one point, the trial court temporarily stayed the

2  proceedings and appointed an expert to evaluate Briseno's competency.  It considered the

3  motions filed by Salciccia, the supporting evidence, the expert's opinion, and Briseno's own

4  testimony in concluding that he was competent.  The trial court even re-evaluated Briseno's

5  competency on the same day that he pled guilty.  It followed the guidelines for ensuring that

6  Briseno's plea was voluntary and intelligent, and that he voluntarily waived his right to a jury

7  trial in accordance with the Supreme Court's decision in *Boykin*.  *See* R.T. at 20-21.

8          As for Salciccia's representation, it was the trial court's role - *not* Briseno's counsel -

9  to make the ultimate competency determination.  The record belies Briseno's suggestion

10  that his counsel could have done more with respect to raising his competency concerns.

11  Salciccia repeatedly raised his concerns regarding Briseno's competency with the trial

12  court; and the trial court simply found, contrary to Salciccia's concerns and opinion

13  otherwise, that Briseno was indeed competent to plead guilty.  Briseno's characterization of

14  Salciccia's role at the competency and plea proceedings as "mute" and "silent" is

15  inaccurate and not supported by the relevant transcripts.  Nor was Salciccia, as Briseno

16  suggests, required to "forcefully" resist his entry of a guilty plea, or to engage in

17  obstructionist behavior or behavior that violated the rules of courtroom decorum.

18          Additionally, there is nothing in the record to suggest that Briseno's free will was

19  overborne by Salciccia's advice to Briseno regarding whether to plead guilty, given the fact

20  that the trial court reasonably determined that Briseno was indeed competent.  In fact, as

21  noted, the plea transcripts demonstrate otherwise, as Briseno expressly confirmed that he

22  had not felt any pressure to plead guilty.  R.T. 21.

23          For these reasons, the court concludes that Salciccia's performance fell well within

24  the range of competence demanded of attorneys in criminal cases, and that Briseno is

25  unable to demonstrate that his performance was deficient.  *See Hill*, 474 U.S. at 56.

26  Having concluded that Briseno has not demonstrated deficient performance, the court is

27  not required to address the prejudice prong.  *See Strickland*, 466 U.S. at 697.

28

1    Therefore, the state court's denial of relief on this claim was neither contrary to, nor

2    an unreasonable application of, clearly established federal law.

3    **III. and IV.    Trial Counsel's Failure to Advise Briseno re: Consequences of a Guilty**

4    **Plea and the Knowing and Voluntary Nature of Briseno's Plea**

5    Because they are related, the court addresses claims two and three together.  In

6    claim two, Briseno contends that he was denied effective assistance of counsel in violation

7    of his Sixth Amendment rights when his trial counsel failed to advise him of the

8    consequences of a guilty plea; and, in claim three, that he was denied due process

9    because his guilty plea was neither knowing nor voluntary since his counsel failed to advise

10    him of the consequences of a guilty plea.

11    Specifically, Briseno contends that his counsel provided ineffective assistance by

12    failing to advise him of the following consequences of his guilty plea, thereby rendering his

13    plea involuntary:

14    (1) that he was likely to receive consecutive prison terms of at least fifteen

15    years to life;

16    (2) that he faced a mandatory minimum sentence of at least fifteen years in

17    prison;

18    (3) that he was likely to be sentenced to at least one indeterminate life term;

19    and

20    (4) that he was statutorily ineligible for probation.

21    The legal standards are the same as those set forth above with respect to the

22    previous claim.  Additionally, in advising a defendant, "[c]ounsel cannot be required to

23    accurately predict what the jury or court might find, but he can be required to give the

24    defendant the tools he needs to make an intelligent decision." *Turner v. Calderon*, 281

25    F.3d 851, 881 (9th Cir. 2002) (counsel who advised defendant to reject offer of 15-years-to-

26    life was not deficient where evidence showed that petitioner informed of potential death

27    penalty at trial, and counsel had allowed petitioner to think about offer overnight).

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  Erroneous advice regarding the consequences of a guilty plea is insufficient to establish

2  ineffective assistance.  Petitioner must establish a "'gross mischaracterization of the likely

3  outcome' of a plea bargain 'combined with . . . erroneous advice on the probable effects of

4  going to trial.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 868 (9th Cir. 2004) (citing

5  *United States v. Keller*, 902 F.2d 1391, 1394 (9th Cir. 1990)).

6      In his January 2006 declaration, Briseno's trial counsel, Salciccia, confirms that he

7  believed that Briseno would be sentenced to a range of forty to sixty years in prison.  He

8  states, though, that he "cannot now recall exactly what advice [he] gave to Briseno about

9  the likely sentence should he plead guilty."  Salciccia presumes that he communicated his

10  concern that Briseno would receive a sentence of at least sixty years.

11      Briseno, however, asserts in his December 2005 declaration that Salciccia never

12  advised him that he was "almost certain to receive a minimum sentence of sixty years to

13  life."  Briseno states that had only a "very brief" discussion with Salciccia regarding the

14  possible sentence prior to pleading guilty.  He contends that Salciccia never told him that

15  he was not eligible for a probationary sentence, that the witnesses he sought to have testify

16  at his sentencing might not be allowed to testify, that there was a mandatory minimum

17  sentence of fifteen years to life, or that he would receive at least one indeterminate life

18  sentence.  Briseno further asserts that Salciccia never explained parole eligibility to him, or

19  that he could be detained following his sentence in state custody as a sexually violent

20  predator in civil commitment proceedings.

21      In terms of new information in the 2005 declaration, Briseno asserts that had he

22  understood the above facts, he would not have pled guilty but would have exercised his

23  right to trial by jury because he believes that "a jury trial . . . would have exposed the many

24  injustices which were done to [him] in the handling of [his] case."

25      Briseno's brother, Modesto, attests that he was "privy to conversations" between

26  Briseno and Salciccia and that he never heard Salciccia tell him or his brother about a

27  mandatory minimum sentence; that Briseno was likely to receive a sentence of at least

28

21

United States District Court
For the Northern District of California

sixty years to life in prison; that Briseno was facing an indeterminate life sentence; that a parole board would make future decisions about Briseno's case; or provide the practical realities of a life sentence.  Modesto does, however, recall that Salciccia advised Briseno "in terms of a range of 40 to 60 years depending on how he presented to the probation department."

Prior to addressing the merits of the instant claim, the court begins by noting that Briseno makes several statements in his December 2005 declaration that contradict not only Salciccia's, and even his brother Modesto's declaration, but also prior statements he made in his own previous declaration and on the record before the trial court.   For example, as discussed in more detail below, following sentencing, Briseno has completely changed his story regarding his desire to have a jury trial.  Additionally, in his previous declaration, Briseno attested that he had been advised regarding parole. *See* Exh. F, at Exh. B ¶ 3.  Briseno now asserts that Salciccia did not discuss the likelihood of parole with him.

Turning to the specific factors underlying the instant claim, the court begins first with Briseno's contention, new to his December 2005 declaration, that Salciccia did not advise him that he was statutorily ineligible for probation.   Salciccia does not address the issue in any of his declarations.  However, review of the record confirms that, even if not by Salciccia, Briseno was clearly advised by the trial court - on more than one occasion - that he was not eligible for probation prior to entering his guilty plea.  Accordingly, to the extent that Salciccia indeed failed to advise Briseno of this fact, and that such failure constituted deficient performance under *Strickland*, Briseno was not prejudiced because the record confirms that both Briseno and Salciccia advised the trial court on the record that they were aware Briseno was statutorily ineligible for probation.  *See Weaver v. Palmateer*, 455 F.3d 958, 968 (9th Cir. 2006); *see also Sophanthavong*, 378 F.3d at 871.

The other three factors underlying Briseno's ineffective assistance claim - the fact that his sentence would at a minimum be fifteen years and was likely to be at least sixty

United States District Court

For the Northern District of California

1    years, the fact that the sentence could include one indeterminate life sentence, and the fact

2    that consecutive rather than concurrent sentences could be imposed – are related in the

3    sense that they are premised upon interpretation of the same California statute.  Briseno

4    and the state briefed these issues extensively in the habeas proceedings before the state

5    appellate courts.  Before the state courts, Briseno argued as a basis for this claim that

6    California Penal Code section 667.61 required the trial court to impose mandatory minimum

7    terms of fifteen years to life, which had to be imposed consecutively, for a minimum term of

8    210 years to life, given the number and type of charges to which Briseno pled guilty.  *See*

9    Exh. F at 20; Exh. L at 11-12.  However, the state pointed out in its brief before the state

10   appellate court, that, contrary to Briseno's interpretation, section 667.61 did not require the

11   trial court to impose consecutive sentences; nor did it require a mandatory life sentence.

12   Instead, the state noted that the statute could be interpreted such that it was within the trial

13   court's discretion to determine whether or not to impose concurrent or consecutive

14   sentences, a decision that would also impact the length and nature of Briseno's sentence.

15         Briseno appears to now acknowledge in his habeas briefs before this court that the

16   state is correct regarding its interpretation of section 667.61.  He concedes in his traverse

17   that the trial court had discretion under that statute, but nevertheless argues that it was

18   "virtually certain" that he would receive a sentence that would keep him in prison for the

19   rest of his life "given the number of separate victims, the vulnerability of the victims, the

20   seriousness of the offenses, the admitted allegations of substantial sexual conduct [], and

21   the circumstances of the offenses, including the abuse of trust."  Briseno argues that it was

22   ineffective assistance for Salciccia to fail to advise him of the "virtual certain[ty]" of

23   consecutive sentences, along with at least one indeterminate life sentence.

24         Briseno's assertion that Salciccia did not advise him of the fact that his sentence

25   would likely be at least sixty years contradicts both Salciccia's and Modesto's declarations.

26   However, even if that factual dispute were resolved in Briseno's favor, and assuming that

27   Salciccia did not advise him that he was likely to receive consecutive sentences, one of

28

23

**United States District Court**

For the Northern District of California

1 which was an indeterminate life sentence, and that such failures constituted deficient

2 performance, Briseno is still not entitled to habeas relief on this claim.

3      That is because Briseno is unable to demonstrate that he was prejudiced as a result.

4 *See Weaver*, 455 F.3d at 966 (noting that court is "well-advised to bypass scrutinizing a

5 criminal defense attorney's representation if the defendant cannot show that he was

6 prejudiced by it").  First, as was the case regarding Briseno's probation eligibility, even if

7 Salciccia did not advise him that the sentence he received would likely result in lifetime

8 imprisonment, review of the record confirms that the trial court clearly did advise Briseno of

9 this fact prior to accepting his guilty plea.  *See* R.T. 19-21.  Second, this case is very similar

10 to a recent Ninth Circuit decision on point.  In *Weaver*, the Ninth Circuit ruled that a habeas

11 petitioner was not prejudiced by counsel's allegedly deficient advice about the probable

12 length and concurrency of sentences under a plea bargain, given the unlikelihood that the

13 defendant, who professed a desire to avoid multiple public trials in order to spare him and

14 his family humiliation and publicity, would have otherwise rejected the plea offer and

15 insisted on risking trial on four brutal rape charges.  *Id.* at 968-969.

16      Like *Weaver*, there are numerous references in the record to Briseno's desire in this

17 case to avoid a trial, and in particular, to avoid publicity regarding the alleged incestuous

18 nature of the charges involving his six year-old son, John Doe 6.  *See* C.T. 152, 167, 168-

19 69, 174.  Because the state indeed dismissed the charges against Briseno involving his son

20 in exchange for his guilty plea, Briseno, like the petitioner in *Weaver*, possessed reasons

21 for pleading guilty independent of the length of the sentence or the strength of the

22 prosecution's case against him.  *See Weaver*, 455 F.3d at 967-68.  This fact is reinforced

23 by Briseno's statements on the record at his change of plea hearing that "the last thing I

24 want to do is have a jury trial."  R.T. 13.

25      Briseno's assertion in his latest declaration (attached to his traverse) that he would

26 have gone to trial by jury had Salciccia advised him of the nature of a probable sentence

27 simply is not credible in light of his statements on the record and the history of this case.  It

28

United States District Court

For the Northern District of California

1   is clear to the court that these statements are simply a response to the deficiencies in

2   Briseno's original arguments on this claim, as pointed out by the state in its opposition.

3   Given the fact that the record reveals both independent reasons for Briseno's guilty plea

4   and that the trial court advised him of the potential nature of his sentence, Briseno has not

5   shown that he was prejudiced by Salciccia's allegedly deficient performance.  Additionally,

6   because Briseno was not prejudiced by counsel's allegedly deficient performance, in part

7   because the trial court properly advised him regarding the likely nature of his sentence prior

8   to his guilty plea, his plea was not rendered unknowing and involuntarily in violation of his

9   due process rights.

10      In conclusion, the state court's denial of relief on this claim was neither contrary to,

11  nor an unreasonable application of, clearly established federal law.

12  **V.      Trial Counsel's Failure to Obtain a Certificate of Probable Cause**

13      Finally, Briseno argues that he was denied effective assistance of counsel in

14  violation of his Sixth Amendment rights when his trial counsel failed to obtain a certificate of

15  probable cause from the trial court, thus precluding him from appealing certain issues.

16      **A.      Certificates of Probable Cause**

17      In the case of a judgment of conviction following a guilty plea, California Penal Code

18  section 1237.5 authorizes an appeal only as to a particular category of issues and requires

19  that steps in addition to filing a notice of appeal be taken.  *In re Chavez*, 30 Cal.4th 643,

20  650 (Cal. 2003).[5]  In order to challenge any issues concerning the validity of a guilty plea, a

21

22      [5]Section 1237.5 provides:

23      No appeal shall be taken by the defendant from a judgment of conviction upon
        a plea of guilty or nolo contendre, or a revocation of probation following an
24      admission of violation, except where both of the following are met:

25      (a) The defendant has filed with the trial court a written statement, executed
        under oath or penalty of perjury showing reasonable constitutional, jurisdictional,
26      or other grounds going to the legality of the proceedings.

27      (b) The trial court has executed and filed a certificate of probable cause for such
        appeal with the clerk of the court.

28

**United States District Court**

For the Northern District of California

defendant must first obtain a certificate of probable cause from the trial court, and an

appeal of any such issues will not be operative unless the defendant does so. *See id.* The

procedural requirement is applied in a "strict manner," *People v. Mendez*, 19 Cal.4th 1084,

1096-97 (Cal. 1999), "regardless of other procedural challenges being made." *Chavez*, 134

Cal.Rptr.2d at 60. "For example, a defendant who has filed a motion to withdraw a guilty

plea that has been denied by the trial court must still secure a certificate of probable cause

in order to challenge on appeal the validity of the guilty plea." *Id.*

However, a certificate is not required if the issue(s) to be appealed arose after the

entry of the plea and do not affect the validity of the plea. *See Mendez*, 19 Cal.4th at 1096.

This generally includes claims of error in the sentencing procedure or in the sentence

imposed. *See Chavez*, 30 Cal.4th at 650 n.3; *but see People v. Shelton*, 37 Cal.4th 759,

766 (Cal. 2006) (where plea agreement specifies a particular sentence, then challenge to

sentence is a challenge to validity of plea and certificate must be obtained).

At the time that Briseno appealed to the California courts, former California Rule of

Court 31(d) set forth the applicable deadlines, as well as other conditions, for filing a

request for a certificate for probable cause, and provided in pertinent part:

> If a judgment of conviction is entered upon a plea of guilty or nolo contendere,
> the defendant shall, within 60 days after the judgment is rendered, file as an
> intended notice of appeal the statement required by section 1237.5 of the
> Penal Code; but the appeal shall not be operative unless the trial court
> executes and files the certificate of probable cause required by that section.
> Within 20 days after the defendant files the statement the trial court shall
> execute and file either a certificate of probable cause or an order denying a
> certificate and shall forthwith notify the parties of the granting or denial of the
> certificate.[6]

---

[6]After Briseno's appeal, the Judicial Council of California repealed Rule 31(d) and
moved its provisions, as amended to former Rule 30(b), effective January 1, 2004. *See
People v. Perez*, 55 Cal.Rptr.3d 683, 688 (Cal. Ct. App. 2007), *review granted*, 62 Cal.Rptr.3d
145 (Cal. June 13, 2007). It then renumbered Rule 30(b), as Rule 8.304(b).

Rule 8.304(b) has been subsequently criticized because when the Judicial Council
revised Rule 31(d), it appears to have inadvertently omitted the language containing the sixty-
day time limit for filing the request for the certificate. *See People v. Perez*, 55 Cal.Rptr.3d 683,
688 (Cal. Ct. App. 2007) *review granted*, 62 Cal.Rptr.3d 145 (Cal. June 13, 2007); *but see id.*
at 689 (noting that Rule 8.308(a) requires that request be filed "in addition to notice of appeal,"
while requiring that notice of appeal be filed within 60 days of judgment).

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The purpose in requiring a certificate of probable cause following guilty pleas is "to promote judicial economy by screening out wholly frivolous guilty plea appeals before time and money are spent on such matters as the preparation of the record on appeal, the appointment of appellate counsel, and, of course, consideration and decision of the appeal itself." *Chavez*, 30 Cal.4th 643, 651 (quoting *Mendez*, 19 Cal.4th at 1095).  Under section 1237.5, the trial court has the discretion to deny a certificate when an appeal would raise frivolous and vexatious issues.  *People v. Hoffard*, 10 Cal.4th 1170, 1178-79 (Cal. 1995); *see also Ramis v. People*, 74 Cal.App.3d 325, 376 (Cal. Ct. App. 1977) (concluding that superior court did not abuse its discretion in denying certificate of probable cause where the record indicated that defendant did not have any grounds for setting aside his plea); *People v. Nigro*, 39 Cal.App.3d 506 (Cal. Ct. App. 1974) (concluding that record supported trial court's denial of certificate where it showed that in pleading nolo contendere, defendant conceded that he "knew quite well" what he was doing and did not support defendant's vague, subjective feeling of pressure or coercion).

### B.  Factual Background

It is undisputed that Briseno told Salciccia that he wanted to file an appeal in this case.  There is, however, some dispute as to the substance of the conversation between Salciccia and Briseno regarding the issues to be appealed and Briseno's likelihood of success on appeal.  In Salciccia's declarations and letter exhibits filed before this court and the state appellate courts,  Salciccia states that he told Briseno that he believed that Briseno had a potential appellate claim based on the allegedly "draconian" nature of his sentence.  There is nothing in all of Salciccia's declarations to suggest that he believed that Briseno had any arguable pre-plea claims or claims related to the validity of his guilty plea, which would have required a certificate of probable cause.  *See* Exh. F, at Exh. A, Salciccia's December 20, 2001 decl. in support of state court appeal ("Regarding filing a

**United States District Court**
For the Northern District of California

notice of appeal, I told Mr. Briseno I did not do appellate work, but that I thought he had a chance on appeal *since the sentence was so draconian*."); Exh. F. at Exh. C, Salciccia's June 20, 2001 letter exhibit to state court appeal ("With regards to discussing an appeal with Mr. Briseno, I told him that I felt that the sentence was draconian that I thought he had some chance of an appeal, but that I did not do appellate work.").

However, in Briseno's current declaration, he suggests that, in addition to the sentencing issues, he discussed appealing the trial court's competency determination and its denial of his motion to withdraw the guilty plea with Salciccia. This statement, however, does not appear in any of Briseno's prior declarations. *See* Exh. 5, Traverse (Briseno's April 30, 2001 declaration in support of motion for relief from default); Exh. F, at Exh. B (Briseno's December 4, 2001 declaration in support of state court appeal).

It is nevertheless undisputed that Salciccia advised Briseno that he was not an appellate attorney, but that he would prepare the notice of appeal for Briseno to file pro se. Salciccia advised Briseno to file it as soon as possible so that the court would appoint an appellate attorney who was more familiar with appellate procedure and requirements right away. Salciccia's declarations are silent on the issue, but Briseno claims that Salciccia did not discuss a certificate of probable cause with him. Salciccia prepared the notice of appeal, and Briseno filed it pro se on June 15, 2000. The notice of appeal stated that Briseno was appealing from the "Probation and Sentencing Order . . . entered on May 12, 2000." Briseno did not file a request for a certificate of probable cause, which under Rule 31(d), would have been due sixty days following judgment, on approximately July 12, 2000.

Appellate counsel, Jill Lansing, was subsequently appointed. It is, however, unclear from the record when that appointment took place, and that information is absent from any of the declarations before this court.[7] On May 10, 2001, Lansing filed a motion on Briseno's behalf requesting that a certificate of probable cause be issued, and that relief

---

[7]According to the appellate court's docket, the notice of appeal was received in the California Court of Appeal on February 5, 2001.

United States District Court

For the Northern District of California

from default for failure to file a timely request be granted.  In that motion, Briseno stated that he desired to challenge the trial court's ruling on his post-plea motion to withdraw his guilty plea and to fire Salciccia.

Specifically, the motion asserted that "there are a number of potential issues on appeal, including the competency issue," as set forth in Lansing's accompanying declaration, that were barred by Briseno's failure to seek and obtain a certificate of probable cause.  In her accompanying declaration, Lansing asserted that there may be issues as to the trial court's determination regarding Briseno's competency.  Additionally, Lansing asserted that there appeared to be an issue regarding Salciccia's failure to raise ineffective assistance of counsel itself as grounds for withdrawal of Briseno's guilty plea. According to Lansing, the underlying ineffective assistance of counsel took the form of Salciccia's failure to advise Briseno regarding a mandatory minimum sentence and that Briseno's guilty plea would result in a life term.

The appellate court summarily denied the motion on June 6, 2001. On June 20, 2001, Briseno filed a subsequent motion for relief from default, again requesting that a certificate of probable cause be issued, this time attaching the June 20, 2001, letter from Salciccia as an exhibit (discussed above).  The California Court of Appeal also summarily denied that request on July 11, 2001.[8]

Subsequently, in November 2001, Briseno filed his opening brief on direct appeal.

---

[8]At the time the state appellate courts considered these motions in 2001, California courts appeared to employ a more liberal standard for granting relief from failure to timely file a request for a certificate of probable cause than they currently do.  Prior to the California Supreme Court's 2003 decision in *Chavez*, California courts relieved a defendant from default when a showing of good cause was made.  *See Chavez*, 30 Cal. 4th at 655-656 (discussing *People v. Sturns*, 77 Cal.App.4th 1382, 1391 (Cal. Ct. App. 2000)).  However, in 2003, in *Chavez*, the California Supreme Court held that the rule that California courts had been relying on to allow relief where good cause was shown did not apply to cases where the defendant failed to timely request a certificate of probable cause.  In *Chavez*, the California Court of Appeal granted the defendant's request for writ relief from his failure to timely file that request, holding that he had shown good cause within the meaning of California Court Rule 45(a).  The Supreme Court reversed, though, concluding that former rule 45(e) did not authorize an appellate court to grant relief from a failure to make a timely request for a certificate of probable cause even if good cause was shown.

United States District Court

For the Northern District of California

Briseno did not argue that the trial court erred in its competency determination, but instead argued only that he should be permitted to withdraw his guilty plea because Salciccia did not raise ineffective assistance of counsel as grounds for withdrawal of Briseno's guilty plea. Exh. C. Briseno contended that the underlying ineffective assistance consisted of Salciccia's failure to warn him that he would spend the rest of his life in prison, and Salciccia's allowing him to plead guilty when Salciccia believed he was incompetent. Exh. C at 16. Briseno argued that since Salciccia was also the same counsel who filed his motion to withdraw, Salciccia did not raise these instances as grounds for withdrawal of his guilty plea. According to Briseno, he was prejudiced by this failure because he contends that he would have been allowed to withdraw his plea had these grounds been raised. Exh. C. at 17.

In opposition, the state argued that the appeal should be dismissed because Briseno's claim for ineffective assistance of counsel challenged the validity of his guilty plea, which required that he obtain a certificate of probable cause, which he did not do.[9] Exh. D. The California Court of Appeal agreed, and on September 23, 2002, dismissed the appeal. Exh. I. The court noted that Briseno's "notice of appeal indicate[d] that his appeal was based upon the court's post plea order imposing sentence and denying probation," but that "in his appellate briefs defendant seeks only to challenge his trial counsel's failure to raise, or his trial counsel's failure to secure independent counsel to raise, *issues going to the validity of defendant's guilty pleas as part of defendant's motion to withdraw those pleas.*" Exh. I (emphasis added). Because this issue "in effect challenge[d] the validity of [Briseno's] guilty pleas," the court dismissed the appeal based on Briseno's failure to obtain a certificate of probable cause, citing California Penal Code § 1237.5, California Rule of Court 31(d); and relevant California Supreme Court cases. *Id.*

Briseno then petitioned the California Supreme Court for review of the California

---

[9]Briseno also filed a reply, which reiterated the same arguments made in his opening brief. Exh. E.

United States District Court

For the Northern District of California

1   Court of Appeal's dismissal order, arguing that the state appellate court erred in dismissing

2   the appeal based on the absence of a certificate of probable cause.  The state supreme

3   court denied review on December 2, 2002.  Briseno then raised the underlying ineffective

4   assistance of counsel claims, already addressed above in this order, in habeas petitions

5   before the California Court of Appeal and the California Supreme Court.  As noted, both

6   courts denied habeas relief on the merits in postcard denials.

7          **C.     Legal Standards**

8          When a defendant instructs counsel to file a notice of appeal, and counsel fails to

9   do so, it constitutes deficient performance.  *Roe v. Flores-Ortega*, 528 U.S. 470, 477

10  (2000).   "Counsel's failure to do so cannot be considered a strategic decision; filing a

11  notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the

12  defendant's wishes."  *Id.*  However, in cases "where the defendant neither instructs counsel

13  to file an appeal nor asks that an appeal not be taken," the question then becomes whether

14  counsel consulted with the defendant on the issue.  *Id.* at 478.  If counsel did consult with

15  the defendant, then "counsel performs in a professionally unreasonable manner only by

16  failing to follow the defendant's express instructions with respect to an appeal."  *Id.*

17  However, if counsel did not consult with the defendant, then counsel's performance is

18  deficient if there is reason to think that a rational defendant would want to appeal or that

19  this particular defendant reasonably demonstrated to counsel that he was interested in

20  appealing.  *Id.* at 480.

21         A petitioner must also show prejudice (i.e., meet the second *Strickland* prong) to be

22  entitled to habeas relief in a failure-to-appeal case.  *Id.* at 483-84; *see also id.* at

23  477-78 (rejecting Ninth Circuit's bright-line rule that failure to file a notice of appeal unless

24  directed not to do so by defendant is per se ineffectiveness).  To show prejudice, the

25  petitioner must demonstrate that there is a reasonable probability that, but for counsel's

26  deficient failure to consult with him about an appeal, he would have timely appealed.  *See*

27  *id.* at 484.   Evidence that there were nonfrivolous grounds for appeal or that the defendant

28

United States District Court

For the Northern District of California

1  promptly expressed a desire to appeal often will be highly relevant in determining whether

2  the petitioner has shown prejudice.

3      **D.    Analysis**

4      Because there do not appear to be any United States Supreme Court or Ninth

5  Circuit cases directly on point, the court finds that the above legal standards pertaining to

6  notices of appeal are instructive.  However, the court notes that this case differs from *Roe*

7  and Ninth Circuit cases interpreting *Roe* because, following consultation with Briseno and

8  at least partially in accordance with Briseno's desires, Salciccia did draft a notice of appeal

9  from the sentence imposed for Briseno to file pro se, which Briseno did.  Unlike the other

10 cases, what is at issue is counsel's alleged failure to file the document - a request for a

11 certificate of probable cause –  required under California law for Briseno to appeal

12 additional issues related to the validity of his guilty plea.

13     That said, turning to the issue of deficient performance, as with the issues discussed

14 above, the court finds it very suspicious that Briseno previously filed two declarations with

15 the state appellate courts that did not contain his most recent assertion that he discussed

16 with and indicated to Salciccia that he desired to appeal the trial court's competency

17 determination and its denial of his motion to withdraw his guilty plea.  Given the

18 inconsistency in the three declarations filed by Briseno himself, and when compared to the

19 *consistency* in Salciccia's declarations and letter exhibits, the veracity of Briseno's most

20 recent revelation is called into doubt.  Accordingly, based on this court's review of the

21 record, it appears that Salciccia believed that Briseno's only viable claims pertained to his

22 sentence and communicated this to him.  Given the record, it would not have been deficient

23 performance for Salciccia to determine that a trial court would not grant a certificate of

24 probable cause as to other issues related to the validity of Briseno's plea, nor would it have

25 been deficient performance for Salciccia to simply file a notice of appeal as to these claims.

26     Nevertheless, even if this court were to credit Briseno's recent statement that he did

27 in fact request Salciccia to file the documents necessary for him to appeal the competency

28

32

**United States District Court**

For the Northern District of California

1    determination and the trial court's denial of his motion to withdraw his plea, thereby leading

2    to a conclusion that Salciccia's failure to file a request for the certificate was deficient, the

3    court concludes that Briseno has not demonstrated prejudice.

4         It is in evaluating prejudice that the failure to file notice of appeal cases provide less

5    guidance.  Unlike those cases involving counsel's failure to file a notice of appeal, in this

6    case, had Salciccia filed a request for a certificate of probable cause, an appeal of those

7    issues would not have been automatic.  Instead, the state trial court would have been

8    afforded an opportunity to review the request, and to deny the request if in its discretion it

9    determined that the issues were frivolous or vexatious.  Accordingly, in evaluating the

10   prejudice issue, this court must consider the likelihood that the state court would have

11   found the claims Briseno asserts that he would have raised, frivolous or vexatious.

12        Briseno's argument in his traverse regarding the claims that he would have raised

13   had a request for a certificate been filed with the state court is also suspect.  In setting forth

14   potential claims, Briseno relies to a large degree on his related motion papers and briefs

15   before the state appellate court.  However, his current reading and interpretation of the

16   state court documents regarding his potential claims is significantly broader than the

17   potential claims actually stated in those motion papers and briefs.  It therefore appears to

18   the court that in his traverse, Briseno has strategically attempted to enlarge the issues that

19   he claims he would have raised from those that he claimed he would have raised in his

20   filings before the state appellate court.   Not only does this constitute a revisionist approach

21   to history, but it also poses exhaustion problems since the state courts were not given the

22   opportunity to consider the issues that Briseno now claims he would have raised.

23   Nevertheless, the court has considered the potential claims Briseno *currently* asserts he

24   would have raised in determining that he is unable to show prejudice based on Salciccia's

25   failure to request a certificate of probable cause.

26        Specifically, Briseno now contends that he would have challenged: (1) the trial

27   court's findings of competence both at the time he entered his plea and a year earlier; (2)

28

United States District Court

For the Northern District of California

the trial court's failure to follow the appropriate procedure for determining competence; (3) trial counsel's ineffective assistance in the proceedings leading up to and including the entry of Briseno's guilty pleas; (4) "issues stemming from the apparent conflict between the court's statements to [Briseno] prior to [Briseno's] pleas wherein [the judge] assured [Briseno] that he would consider any evidence supporting [Briseno's] arguments for leniency, including hearing testimony from mitigation witnesses at sentencing;" and (5) the trial court's denial of Briseno's motion to withdraw his guilty pleas.[10]

The court begins by noting that it has already addressed above in this order in conjunction with federal habeas claims 1-3 why potential claim (3) lacks merit.  That is because claim (3) above is premised on the very ineffective assistance claims raised in this federal habeas petition and denied by the state appellate courts in Briseno's state habeas petition.  However, the court does not conclude that this ineffective assistance of counsel claim, based on Salciccia's failure to prepare a request for a certificate of probable cause, fails simply because one of the potential claims Briseno asserts he would have raised lacks merit.

Instead, the court concludes that Briseno is unable to demonstrate prejudice because it is highly probable that the state trial court would have denied a certificate of probable cause as to the above potential issues, and thus Briseno would not have been permitted to appeal those issues anyway.  This is because the trial court would very likely have concluded, given the record, that the above issues were frivolous and/or vexatious. Potential issues one and two relate directly to the trial court's determination regarding competence, as does part of the potential issue three (ineffective assistance of counsel claim) as it relates to Salciccia's beliefs regarding Briseno's competence, and potential issue five regarding the trial court's denial of Briseno's motion to withdraw his guilty plea. The trial court would have been extremely likely to consider these issues frivolous and

---

[10] Again, Briseno's long list of potential claims is highly suspect.  Specifically, the court notes that Briseno saw fit to raise *only* the ineffective assistance claims listed at (3) above in his direct appeal, which the California Court of Appeal subsequently dismissed.

United States District Court
For the Northern District of California

1  vexatious given the number of times that Briseno (via Salciccia) raised competency issues

2  with the trial court and the number of times that the trial court determined Briseno was

3  indeed competent to proceed.  This conclusion is supported by the trial court's statements

4  on the record as set forth above in the factual background section of this order.

5          As for the remaining potential claims set forth in Briseno's traverse, it is also

6  extremely likely that the trial court would have denied a certificate as to them as frivolous

7  and/or vexatious.  First, review of the record and the transcripts demonstrates that contrary

8  to Briseno's assertion, the trial court never promised Briseno "leniency."  In fact, quite the

9  opposite is true.  The trial court repeatedly advised Briseno that he was statutorily ineligible

10  for probation, and appropriately advised him regarding the potential length of his sentence.

11  Additionally, given the trial court's repeated admonishments regarding the consequences of

12  Briseno's guilty plea, as discussed at length above, it is highly probable that the trial court

13  would have denied a certificate of probable cause as to Briseno's ineffective assistance of

14  counsel claim to the extent that it was based on Salciccia's alleged failure to advise Briseno

15  regarding the consequences of his guilty plea.[11]

16          For all of these reasons, this court concludes that Briseno cannot show prejudice

17  based on Salciccia's failure to file a request for a certificate of probable cause.

18  Accordingly, the state court's denial of relief on this claim was neither contrary to, nor an

19  unreasonable application of, clearly established federal law.

20  **VI.    Request for Evidentiary Hearing**

21          Briseno also requests an evidentiary hearing on the above claims in his traverse.

22  The standards set forth above regarding expansion of record are relevant to Briseno's

23  _____

24          [11]Briseno's argument that prejudice can be established by any "possibility" that the trial
    court would have granted a certificate of probable cause is misguided. The Supreme Court's
25  decision in *Roe* is clear that the standard for measuring prejudice in this case is one of
    "reasonable probability." 528 U.S. at 485. Moreover, the case Briseno relies on, *United States*
26  *v. Kwan*, is factually distinguishable from this one, and involved an attorney's affirmative
    misrepresentations as to his expertise in immigration law and as to the immigration
27  consequences of the defendant's guilty plea. 407 F.3d 1005, 1015-1017 (9th Cir. 2005). For
    all of the reasons above, there was a very high probability that the trial court would have
28  denied the certificate, given the record in this case.

1   request for an evidentiary hearing.   As noted, Briseno did exercise diligence in so far as he

2   requested an evidentiary hearing before the state appellate courts in conjunction with his

3   state habeas petition.

4          However, even though Briseno may have exercised diligence in making the request

5   before the state court, there is no per se requirement for an evidentiary hearing.  *Turner*,

6   281 F.3d at 890.   A petitioner is entitled to an evidentiary hearing on ineffective assistance

7   of counsel claims only if he can demonstrate that, if his allegations were proven at the

8   evidentiary hearing, deficient performance and prejudice would be established.  *See id.*

9   Here, as discussed in detail above, this court has considered the "new" information

10  submitted by Briseno in conjunction with his request to expand the record, and it is not

11  clear to the court "what more an evidentiary hearing might reveal of material import."  *See*

12  *Gandarela v. Johnson*, 286 F.3d 1080, 1087 (9th Cir. 2002) (denying petitioner's request for

13  evidentiary hearing regarding his assertion of actual innocence).  Because Briseno's claims

14  may be resolved by reference to the state court record and the documentary evidence he

15  has submitted, the court denies his request for an evidentiary hearing.  *See Griffey*, 345

16  F.3d at 1067 (even where petitioner had shown diligence entitling him to evidentiary

17  hearing, Ninth Circuit concluded that petitioner was not entitled to evidentiary hearing

18  because his claims could be resolved by reference to the state court record and the

19  documentary evidence he submitted); *see also Campbell v. Wood*, 18 F.3d 662, 679 (9th

20  Cir. 1994).

21                              **CONCLUSION**

22          For the reasons set forth above, Briseno's petition for writ of habeas corpus is

23  DENIED because the appellate court's decision was neither contrary to, nor an

24  unreasonable application of, clearly established federal law; nor was it based on an

25  ////

26  ////

27  ////

28

1  unreasonable determination of the facts in light of the evidence presented.  This order fully

2  adjudicates this case and terminates all pending motions.  The clerk shall close the file.

3  **IT IS SO ORDERED.**

4

5  Dated: September 17, 2007

6  _____

7  PHYLLIS J. HAMILTON
   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California